IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN E. TARPLEY, *

Plaintiff, *

v. * Civil Action No. GLR-15-1132

STEPHEN T. MOYER, et al., *

Defendants. *

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', Frank B. Bishop, Jr, Brian W. Custer, Cory A. Dolley, Wendell M. France, Robert M. Friend, Zachery D. Gentzler, Walter E. Iser, Jr., Richard S. Miller, Steven J. Miller, Jr, Stephen T. Moyer, Carroll A. Parrish, Richard S. Roderick, Bobby P. Shearin, Nicholas J. Soltas, Ronald R. Stottler, J. Michael Stouffer, and Bradley A. Wilt, Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 22)[1] and Plaintiff Steven Tarpley's Amended Motion under Federal Rule of Civil Procedure 56(d) in response to Defendants' Motion (ECF No. 27). The Motions are ripe for disposition. Having reviewed the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Defendants' Motion and deny Tarpley's Motion.

## I. BACKGROUND[2]

Plaintiff Steven Tarpley is a prisoner confined to North Branch Correctional Institution ("NBCI") and claims that he is "an inmate advocate/representative" who provides assistance to any other inmates with administrative or criminal proceedings. (Compl. at 6). He states that on November 1, 2012, he was summoned to the Sergeant's office in Housing Unit 3 where he met with

[1] Defendants also filed a Motion for Extension of Time (ECF No. 21) which shall be granted.
[2] Unless otherwise noted, the following facts are taken from the Complaint. The facts are viewed in a light most favorable to Plaintiff.

Sgt. Brian Custer and Sgt. Leah Youngblood and three unknown correctional officers. Id. Custer was holding a copy of a notice Tarpley had put up advising other inmates to contact the U.S. Department of Justice with any serious complaints concerning NBCI staff and offering assistance in doing so. Id. Tarpley states that Custer and an unknown male officer verbally threatened him for posting the notice. Id.

On November 7, 2012, Tarpley states that Officer Jennifer Robertson served a Notice of Infraction on him, but would not allow Tarpley to read the report before signing for service. (Compl. at 7). Tarpley explains he needed to read the report to learn the facts and list any relevant witnesses or other evidence he wanted to present at the disciplinary hearing at the time of service. Id. Tarpley admits that Robertson told him he was charged with refusing to lock in to his cell after receiving morning medication. Id. Tarpley learned, however, that the Notice of Infraction alleged the incident occurred on the date he moved to the new cell and that it was written by Sgt. Youngblood. (Compl. at 8).

On December 18, 2012, Tarpley alleges a falsified report was written by Officer Dale Troutman charging Tarpley with interfering with an officer in the performance of his duties, inciting a riot or disturbance, and committing acts of disrespect. Id. The report was based on an incident where Tarpley refused to sit at a table with three gang members. Id. Following a brief interview with Troutman, Tarpley claims that Officer Daniel Robertson told Troutman he had heard enough and handcuffed Tarpley. Id. Robertson then escorted Tarpley to housing unit one where he was left in a strip cage. Id. Tarpley asserts his repeated requests to be taken to a holding cell to use the toilet were ignored and that he defecated in the strip cage. Id. He was then removed from the strip cage at approximately 9:30 p.m., without being allowed to wash the feces off of himself. Id.

On December 24, 2012, Tarpley had a fight with his cellmate. (Compl. at 9). He claims his cellmate, Vincent, was a newly indoctrinated member of the Aryan Brotherhood who was angry with Tarpley for refusing to join the group and continuing to associate with people of color. Id.

Following the fight, Tarpley was taken to a contingency cell. Id. He claims he was deprived of all his property except a mattress which was provided the following morning. Id. On March 4, 2013, Tarpley prevailed on a Motion for Preliminary Injunction seeking an order from the Circuit Court for Allegany County to enjoin Warden Shearin from obstructing his access to the library. Id. On March 7, 2013, Tarpley and his cellmate were stopped by Defendants Dolley and Gentzler as they were attempting to go to lunch. (Compl. at 10). A cell search was performed on Tarpley's cell and a razorblade was discovered. Id. Tarpley was handcuffed and escorted to a different housing unit. Id. Tarpley adds he was denied lunch. Id.

On August 14, 2013, Tarpley claims that Defendant Nicholas J. Soltas said, "You know all of your ARPs and lawsuits really don't do anything. I just had to go and sign for counsel again, what do you think it is, the squeaky wheel gets the oil? Well I've got news for you, the squeaky wheel gets bumped around a lot here." (Compl. at 12). Soltas then left claiming to resume checking Tarpley's property, and upon return, he told Tarpley he had found a note that contained a threat to another inmate. (Compl. at 12–13). Soltas informed Tarpley he was charging him with a rule violation. (Compl. at 13). Soltas refused to return Tarpley's property, even though he informed Soltas that he had pleadings due in court by August 24, 2013, but Soltas still refused. Id. Tarpley claims that in the days to follow, staff repeatedly refused to return his property. Id.

On August 18, 2013, Tarpley states his cellmate, Richard Owens, put his arm out of the slot in the cell door to prevent it from being closed in an effort to bring a Sergeant to the cell and inform him that the officers were unreasonably refusing to return Tarpley's property. Id. Tarpley claims the usual practice when this occurs is for correctional officers to place a shield across the cell door and to notify the unit manager. Id. Instead, Officer Steven Miller sprayed both Owens and Tarpley with pepper spray and charged both men with violation of "various conduct rule[s]." Id. Tarpley states that Owens was provided with a decontamination shower, but he was not. Id.

On September 19, 2013, Hearing Officer Jon Sandstrom dismissed all charges concerning the alleged threatening note Soltas found in Tarpley's property. (Compl. at 14). Despite dismissal of the charges against Tarpley, he was not removed from segregation status. Id. Instead, Tarpley was served with a Notice of Assignment to administrative segregation and "idle status" for more than four months. Id. Tarpley claims that from August 2013 through March 2014, Defendants engaged in an arbitrary practice of transferring him from one cell to another, housing him with inmates who were members of prison gangs. (Compl. at 14–15). Tarpley alleges this was purposefully done in order to provoke him into either fighting the other inmate or refusing a housing assignment, either of which would result in administrative penalties. (Compl. at 15).

On April 16, 2015, Tarpley initiated this action claiming Defendants' conduct violate his rights under the Eighth Amendment and Due Process Clause of the Fifth and Fourteenth Amendments. (ECF No. 1). As relief, Tarpley seeks monetary damages as well as declaratory and injunctive relief. (Compl. at 21). On February 16, 2016, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 22). On May 25, 2016, Tarpley filed an Opposition to the Motion. (ECF No. 27).

## II. DISCUSSION

### A. Standard of Review

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012))

(internal quotation marks omitted), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

In this case, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 22). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). In the Court's discretion, it will not convert Defendants' Motion to Dismiss into a Motion for Summary Judgment. Accordingly, the Court will not consider any extra pleading materials outside of Tarpley's Complaint.

## B. Analysis

### 1. Retaliation Claim

Tarpley's Complaint largely alleges that Defendants unlawfully retaliated against him. In order to prevail on a claim of retaliation, Tarpley must first allege "the retaliatory act was taken in response to the exercise of a constitutionally protected right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). Second, Tarpley must demonstrate he suffered some adverse impact or actual injury. Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). Third, Tarpley must allege "that but for the retaliatory motive the

complained of incident[s] . . . would not have occurred." Scott v. Kelly, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000), aff'd sub nom. Scott v. Moore, 6 F. App'x 187 (4th Cir. 2001). Additionally, "[i]n the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams, 40 F.3d 72, 74 (4th Cir. 1994)).

Here, Tarpley premises his retaliation claim mostly on Defendants allegedly retaliating against him for "providing legal assistance" to other inmates at NBCI, filing ARP complaints against Defendants, and prevailing in an NBCI disciplinary hearing. (Compl. at 17–19). Tarpley does not have a constitutionally protected right to provide assistance to other inmates on legal matters, however. Thaddeaus–X v. Blatter, 175 F.3d 378 (6th Cir. 1999) (citing Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993)); Munz v. Nix, 908 F.2d 267, 269 (8th Cir. 1990); see also, e.g., McCoy v. Stouffer, No. WDQ-10-1583, 2013 WL 4451079, at *18 (D.Md. Aug. 15, 2013) (granting motion for summary judgment in favor of prison staff because, inter alia, there is no constitutional protection for serving as a "jailhouse lawyer"). Nor does Tarpley have a constitutionally protected right in this Circuit to participate in an administrative remedy or other grievance process voluntarily established by the state. Adams, 40 F.3d at 75. Accordingly, the Court finds that Tarpley fails to state a retaliation claim to the extent he bases it on providing assistance on legal matters, filing ARP complaints, or prevailing in a disciplinary hearing.

Tarpley also premises his retaliation claim on Defendants allegedly retaliating against him for succeeding in a motion for preliminary injunction against Warden Shearin. (Compl. at 16, 17).[3] Specifically, Tarpley alleges that in retaliation for prevailing over Warden Shearin in a motion for preliminary injunction, Defendants Dolley and Gentzler planted a razorblade in his cell and then

[3] Tarpley alleges the motion was filed in a case before the Circuit Court for Allegany County, Case No. 01-C-11-036008.

wrote a report falsely accusing him of possessing a weapon in violation of NBCI rules. (Compl. at 10, 16, 18). Tarpley further alleges that the discovery of the razorblade caused officers to refuse him lunch that day and transfer him to the Special Housing Unit, NBCI's segregation unit. (Compl. at 18). Tarpley further states that in a separate incident in August 2013, Defendant Soltas threatened him for filing lawsuits by saying "the squeaky wheel gets bumped around a lot here." (Compl. at 12). Soltas also refused to return Tarpley's property after discovering a threatening note allegedly planted by Soltas, even though some of the property related to Tarpley's pleadings due in ten days. (Compl. at 12–13, 19).

An inmate has no general constitutional right to be free from being falsely accused in a misbehavior report. See Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986). But unlike participation in an administrative remedy procedure, the "filing of a lawsuit carries significant constitutional protections, implicating the First Amendment right to petition the government for redress of grievances, and the right of access to courts." Am. Civil Liberties Union of Md., 999 F.2d at 785 (quoting Hoeber on Behalf of NLRB v. Local 30, 939 F.2d 118, 126 (3rd Cir. 1991)). In order to state a retaliation claim, Tarpley is required to show that NBCI's actions "adversely impacted these First Amendment rights." Id. (emphasis added). Thus, if NBCI's actions did not "chill, impair, or deny [Tarpley]'s right to exercise his constitutional right, the allegations fail to state a retaliation claim cognizable under § 1983." Oliver v. Powell, 250 F.Supp.2d 593, 600 (E.D.Va. 2002) (quoting Ballance v. Young, 130 F.Supp.2d 762 (W.D.Va. 2000) (internal quotation marks omitted).

Here, to the extent Tarpley premises his retaliation claim on alleged conduct that occurred after he prevailed on his motion for preliminary injunction, he fails to state a claim. Nowhere does Tarpley allege any adverse impact on his ability to prosecute his civil action before the Circuit Court of Allegany County or any other civil action. Tarpley never states that any of the harms he alleged—refusing him lunch, transferring him to the Special Housing Unit, verbal threats, or confiscating his

property—chilled, impaired, or denied him his right to prosecute any litigation.[4] See Oliver, 250 F. Supp. 2d at 600 (granting summary judgment in favor of prison employees on inmate's retaliation claim because inmate never alleged the false, retaliatory disciplinary charges harmed his litigation). Accordingly, the Court finds that Tarpley fails to state a claim for retaliation.

**2. Eighth Amendment Claim**

Tarpley alleges an Eighth Amendment claim of failure to protect from violence. In order to prevail, Tarpley must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)).

> Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted). For a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "the official [must know] of and disregard[] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. Farmer, 511 U.S. at 834, 837.

[4] Tarpley did state that while in a contingency cell after fighting one of his cellmates, he was denied his welfare commissary, which included a writing pad, envelopes, pens, and other items "important and necessary" for his case before the Circuit Court for Allegeny County. (Compl. at 9). He alleged, however, that this occurred on December 24th, 2012, before Tarpley prevailed on his motion for preliminary injunction on March 4, 2013. Id. Nowhere did Tarpley allege that the denial of his commissary hurt his litigation at any point in that case.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury." Danser v. Stansberry, 772 F.3d 340, 346–47 (4th Cir. 2014) (quoting Farmer, 511 U.S. at 834). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993). Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834 (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. Id. at 837. Where prison officials responded reasonably to a risk, they may be found free of liability. Id. at 844.

Here, Tarpley alleges Defendants Miller and Iser "deliberately and maliciously" placed him in cells with inmates affiliated with gangs Tarpley has fought against. (Compl. at 20). His allegations fail to meet the objective component of Eighth Amendment liability. The only accompanying injuries Tarpley states are the administrative penalties resulting from his refusal of the housing assignments. (Compl. at 14–15). These administrative penalties demonstrate neither a serious physical injury nor a serious emotional injury, nor do they put Tarpley at a substantial risk to either injury. See Danser, 772 F.3d at 346–47 (quoting Farmer, 511 U.S. at 834). Accordingly, the Court finds that Tarpley fails to state an Eighth Amendment claim of failure to protect from violence.

Tarpley also alleges an Eighth Amendment claim of excessive force for Miller's use of pepper spray and Iser's subsequent denial of a decontamination shower. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). This Court must look at the need for application of force; the

relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury, alone, is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

The Fourth Circuit's decision in Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996), provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. These additional considerations inform the second and fourth prongs of the Whitley test, as "it is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain.'" Williams, 77 F.3d at 763 (quoting Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984)). Thus, in this Circuit the use of pepper spray or tear gas in correctional facilities is carefully scrutinized because of their "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." Id.

When reviewing a claim that the use of pepper spray or mace constituted excessive force, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." Id. (quoting Slackan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). Pepper spray or mace is constitutionally permitted in small quantities to "control a recalcitrant inmate." Id. (quoting Landman v. Peyton, 370 F.2d 135, 138 & n.2 (4th Cir. 1966), cert. denied, 388 U.S. 920 (1967)) (internal quotation marks omitted). Because "limited use" of pepper spray or mace

"constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." Id.

Here, Tarpley alleges his cellmate, Richard Owens, put his arm through the slot in their cell door to keep their cell door open and that in response, Defendant Miller used pepper spray on Tarpley and Owens, allegedly departing from the normal response of getting a Sergeant to talk to Owens. (Compl. at 13). Tarpley admits Owens was holding the slot open on Tarpley's behalf. See id. ("Owens elected to put his arm out . . . so [the Sergeant] may be informed of his officer[']s unreasonable refusal to return Plaintiff's property."). Tarpley states him and Owens were charged with NBCI rule violations for their conduct. Id. Tarpley further states that while Iser provided Owens with a shower after the incident, he did not provide Tarpley with one. (Compl. at 13, 19).

Tarpley fails to state an Eighth Amendment claim of excessive force for Miller's use of pepper spray. Tarpley admits in his Complaint that he and Owens were working together to purposefully break NBCI rules in order to gain an officer's attention. (Compl. at 13). Applying the Whitley factors, Owens and Tarpley provoked Miller to use the pepper spray when Owens stuck his arm out their cell door slot, which the Fourth Circuit has recognized "pos[es] a danger to officers who might walk by [their] cell." Grayson v. Peed, 195 F.3d 692, 696 (4th Cir. 1999). By working together to break NBCI rules, Tarpley and Owens were admittedly "recalcitrant inmate[s]," permitting Miller to use pepper spray in small quantities under the Constitution. Williams, 77 F.3d at 763. Tarpley does not allege that the amount of gas was excessive; he simply objects to Miller's use of the gas at all, rather than getting a Sergeant. (Compl. at 13). Miller's use of pepper spray indicates a "mild" and "tempered" response to the rule violation, however. Williams, 77 F.3d at 763. And while not dispositive, Tarpley's failure to plead any injury associated with Miller pepper spraying him indicates Miller's use of force was necessary in this situation. Wilkins, 559 U.S. at 38. Accordingly, the Court finds that Tarpley fails to state an Eighth Amendment claim of excessive force for Miller's use of pepper spray. Because Tarpley also fails to allege any injury associated with

Iser's denial of a decontamination shower, the Court likewise finds that Tarpley fails to state an Eighth Amendment claim premised on Iser's denial.

Even when the facts are viewed in the light most favorable to Tarpley, the Court concludes that Tarpley fails to state an Eighth Amendment claim. To the extent Tarpley states a claim under the Due Process Clause of the Fourteenth Amendment, it likewise fails. See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (holding the standard of deliberate indifference is the same under the Eighth Amendment and Due Process Clause of the Fourteenth Amendment). The Court will, therefore, grant Defendants' Motion.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF. No. 22) and Motion for Extension of Time (ECF. No. 21) are GRANTED. Plaintiff's Motion to Service Process on Defendants (ECF No. 10) is DENIED. The Complaint (ECF No. 1) is DISMISSED. The Clerk shall CLOSE this case.

A separate Order follows.[5]

Entered this 21st day of September, 2016

/s/

George L. Russell, III
United States District Judge

[5] Having found no constitutional violation, the Court need not address Defendants' argument of qualified immunity. Additionally, to the extent the Complaint can be construed as raising state law claims, the Court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3) (2012); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).